BEER, Judge.
Sears, Roebuck and Company protested “charges” against their “account” for $33,-906.76 in extended unemployment benefits from the fourth quarter of 1975 through *1011 the first quarter of 1977 [1] by the filing of a petition for judicial review of the Administrator of the Office of Employment Security’s decision within the time period set in LSA-R.S. 23:1541(3). The Administrator rejected Sears’ protests. That decision, subsequently affirmed by the Civil District Court and now the subject of this appeal, sets out the pertinent chronology of events:
“In 1970 Congress passed the Federal-State Extended Unemployment Compensation Act of 1970 to combat the effects of depression. The economic situation of the nation continued to worsen and in 1975 the Louisiana Legislature, on recommendation of the U. S. Department of Labor, Employment and Training Administration, changed the Louisiana Employment Security Law to provide a 4% State trigger and a waiver of the 120% requirement so that the State could be reimbursed 100% while the national trigger was on. It was the State’s understanding that as long as the State’s trigger was off that the Federal Government would pay 100% of the extended benefits and 50% when the State trigger was on.
On March 1, 1975, the State trigger went on under the 4% provision with the 120% waiver. On November 15,1975, the State trigger went off but the National trigger was still on so the Agency continued to pay extended benefits but charged the Federal Government 100% of the benefit charges as it had done prior to March 1, 1975. On February 23, 1977, the State trigger went on again and the State began charging the Federal Government 50% of the extended benefits.
In March, 1977, the State was notified that even though the Federal Government had paid 100% of the extended benefits since February 23, 1975, except for the period of when the State indicator was on, that it should have paid only 50% since the national indicator exceeded 4.5% even though the State’s indicator was less than 4%, and informed the State that the State’s trust fund balance should be reduced $12,736,782.50 to offset the excess amount of extended benefits paid by the Federal government. After lengthy negotiations to resolve this problem the Federal Government prevailed and, accordingly, the trust fund balance was reduced and the State undertook the arduous task of reconstructing the extended benefit payments and charging 50% of these payments to the experience rating records of the appropriate employers. The quarters involved were the 4th quarter of 1975 through the 1st quarter of 1977. The charging of these extended benefits was completed and mailed on or about January 30, 1978. Shortly thereafter Sears Roebuck and Company received notice that its experience rating record was being charged for these extended benefits for the quarters as follows:
4th of 1975 $ 3,209.05
1st of 1976 11,524.68
2nd of 1976 5,991.27
3rd of 1976 8,264.12
4th of 1976 4,927.64
1st of 1977 398.83.”
Sears contends that these benefit charges were assessed against their account as a result of the State Office of Employment Security’s failure to correctly interpret the Federal-State Extended Unemployment Compensation Act of 1970 in that the State office erroneously charged the federal government with 100% of extended benefit charges at a time when the national unemployment rate only called for 50% of such charges to be paid by the federal government. The federal overpayments have now been administratively charged against Louisiana’s “account” and that charge has, in effect, been passed back to Louisiana employers (Sears, in this case).
Sears vigorously contends that LSA-R.S. 23:1551 provides authority only for the Administrator to increase the contribution of any employing unit “within twelve months *1012 of the occurrence of the administrative error” and avers that since the pertinent administrative errors began to occur at the end of the fourth quarter of 1975 (and at the end of each succeeding quarter when 50% of the extended benefit charges should have been charged to Louisiana employers instead of to the federal fund), the Administrator had only twelve months from the end of each of these quarters to adjust Sears’ account. There is no doubt that the extended benefit charges noted above have, in fact, now directly caused Sears’ employer contribution rate to be increased from .6% to .9% for 1978 on its entire taxable payroll, which has, in turn, markedly increased Sears’ unemployment taxes for 1978.
The Administrator’s decision rejecting Sears’ contentions states:
“ . . . since the adjustment of the records occurred within a year of the rejection by the Federal Government of the extended benefit charges in question they were properly charged to the experience records of the employers. Furthermore, since the benefit charges did not affect the rates of Sears, Roebuck and Company for prior or existing tax periods the demands of Sears, Roebuck and Company protest are without basis as R.S. 23:1551 intent is to prohibit retroactive tax rate increases, not to prohibit adjustments that might cause a tax rate increase on current or future tax rates.”
Thus, we see that the Administrator has interpreted the twelve-month limit provided by LSA-R.S. 23:1551, in a manner that permits the increase. This conclusion is reached by acceptance of the premise that the agency has not increased Sears’ tax rate for any quarter more than twelve months past.
The Administrator asserts that the occurrence of the administrative error dates from the time that the federal agency called attention to the errors (March of 1977) and not when the Administrator erroneously assessed the federal government instead of Louisiana employers (1975 and 1976). However, the language of the statute mandates that:
“[T]he administrator has no authority to make any adjustment or correction which will increase the contribution of any employing unit unless such adjustment or correction is made within twelve months of the occurrence of the administrative error.” LSA-R.S. 23:1551. (Emphasis ours.)
Thus, Section 1551 leaves no doubt that the Administrator has no authority to make any adjustment or correction which will increase the contribution of any employment unit, unless made within twelve months of the occurrence of the administrative error. Since the adjustment of Sears’ account for the quarters in question (1975— 1976) has, clearly, been the sole precipitant for the increase in its 1978 unemployment contribution, the twelve-month limitation must apply. The Administrator may not rectify his agency’s own error by untimely charging Sears’ account on January 30, 1978, with extended benefit charges now based upon insufficient charges for quarters ending prior to January, 1977. The substantive effect is to bring about a marked increase in Sears’ 1978 charges because that charge is now based upon increases which are, in fact, completely attributable to the years when the errors occurred (1975 — 1976).
Accordingly, the judgment of the Civil District Court upholding the ■ Administrator’s determination must be and the same is hereby reversed. This matter is remanded to the Civil District Court for the Parish of Orleans for further proceedings consistent with this decree. Each party is to pay his own costs of this appeal.

REVERSED AND REMANDED.

. Under the Federal-State Extended Unemployment Compensation Act of 1970, extended benefits are additional amounts payable to unemployment claimants who have exhausted their 28 weeks of regular benefits during a time period pursuant to LSA-R.S. 23:1616, when the level of state or national insured unemployment indicates an “on” indicator.